THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* PATRICK J. LANGAN, Appellant.

Argued December 4, 1951; decided March 13, 1952.

*Robert J. Edelman* for appellant.  I. There was no hearing on appellant's application for a writ of error *coram nobis*.  The purported " hearing " held by the Court of General Sessions

of New York County did not satisfy the traditional concept of what constitutes a " hearing " or " trial ". Hence, appellant was denied his right to a hearing on the questions of fact raised by his sworn allegations. (*Matter of Lyons* v. *Goldstein,* 290 N. Y. 19; *Rice* v. *Olson,* 324 U. S. 786; *Walker* v. *Johnston,* 312 U. S. 275; *Waley* v. *Johnston,* 316 U. S. 101; *People* v. *Richetti,* 302 N. Y. 290.) II. The presumption of regularity attaching to the judgment was rebutted by appellant's evidence. The People failed as matter of law to meet the burden of proof cast upon them when the presumption was met by appellant's evidence. (*People* v. *Bernoff,* 61 N. Y. S. 2d 46; *People* v. *Richetti,* 302 N. Y. 290.) III. As matter of law, there is no evidence in the present record which meets appellant's proof that he was not represented by counsel. (*Matter of Bojinoff* v. *People,* 299 N. Y. 145; *People* v. *McLaughlin,* 291 N. Y. 480.)

*Frank S. Hogan, District Attorney (Jack M. Cotton* and *Richard G. Denzer* of counsel), for respondent. I. The motion was properly denied. (*Canizio* v. *New York,* 327 U. S. 82; *Walker* v. *Johnston,* 312 U. S. 275.) II. No formal hearing requiring the presence of defendant was necessary. (*Foster* v. *Illinois,* 332 U. S. 134; *Canizio* v. *New York,* 327 U. S. 82; *Walker* v. *Johnston,* 312 U. S. 275; *People* v. *Fanning,* 300 N. Y. 593.)

LEWIS, J. We review an order of the Appellate Division affirming an order of the Court of General Sessions, New York County, which denied the petitioner-appellant's application for a writ of error *coram nobis.*

On February 5, 1930, the petitioner and one Moffitt appeared in the Court of General Sessions where each entered a plea of guilty to the crime of attempted robbery, third degree. Thereupon there was imposed upon the petitioner a penitentiary sentence for an indeterminate term. On May 31, 1932, the petitioner was convicted in the Court of General Sessions of robbery, first degree, and was then sentenced as a second offender to State prison for a term of thirty years. While serving the latter sentence the petitioner on October 27, 1950, applied in the Court of General Sessions for a writ of error *coram nobis,* his demand being that the court vacate the judgment by which he had been convicted in 1930, upon the ground that he had not then been advised of his right to counsel, nor

was he represented by counsel at the time of that conviction.

Upon the present appeal, the petitioner challenges the order of the Appellate Division upon the ground that the hearing in the present proceeding at the Court of General Sessions did not afford him rights to which he was entitled as a matter of law. Although, in his motion papers, the petitioner had requested an order directing his return to the Court of General Sessions and, to accomplish that end, had annexed to his petition a form denominated a " Body Order " to be filled out and signed by a judge of that court, the order form was not put to use and he was not present in court when the hearing in this proceeding took place.

This court has recently had occasion to consider the right of an applicant for a writ of error *coram nobis* to a trial in open court. In *People* v. *Richetti* (302 N. Y. 290, 296) we held that a denial of such a writ upon the petition and opposing affidavits alone, without a hearing, constituted a deprivation of due process whenever the petitioner's allegations were not " conclusively refuted by unquestionable documentary proof ". That ruling gives direction to our inquiry: Were the allegations of the verified petition herein conclusively refuted by unquestionable documentary proof which made futile the petitioner's presence at the hearing?

In support of the relief sought by the petitioner there was before the trial court his verified petition stating that at the time of his trial in 1930 he was not represented by counsel and that he was not visited by counsel nor informed of his right to counsel between January 6, 1930, the date of his arraignment, and February 18, 1930, the date of his sentence. A supplemental affidavit by the petitioner was also before the court which pointed out alleged irregularities in notations appearing on the indictment, among which was one that a notice of appearance for the petitioner had been filed by Le Roy Campbell; that in answer to appellant's written inquiry he received from the associate counsel to the Legal Aid Society of New York City a letter — annexed to the supplemental affidavit — stating that, according to the records of the Court of General Sessions, the petitioner was not represented by Le Roy Campbell but by Thomas J. Sullivan. Our examination of the indictment, which is of record before

us, discloses no notation that Thomas J. Sullivan appeared as counsel in the case at any time. The supplemental affidavit also contains the following statement by the petitioner — " The tacts are that Mr. I. Abeldorf was hired by the co-defendant's [Moffitt's] family to defend him solely. The indictment shows that Mr. Abeldorf was counsel for the co-defendant James Moffitt, and not for the defendant [Langan]."

The District Attorney, appearing for the respondents, filed no affidavit in opposition to the petitioner's motion, his only written presentment to the court being an unverified paper bearing the caption " District Attorney's Memorandum in Opposition to Motion for a Writ of Error *Coram Nobis*." The facts recited in that memorandum included those which were historically descriptive of the motion and in addition the following conclusory statements: " The defendant was not deprived of his constitutional rights. The notations on the original indictment indicate that the defendant was represented by counsel while the minutes of sentence also show that an attorney appeared on the defendant's behalf. The mere statement of the defendant made almost twenty years after the event cannot overcome the inference raised by these facts or the presumption of regularity which attaches to every final judgment of this Court."

Our examination of the notations on the indictment, to which the District Attorney's memorandum referred, discloses a record which is confused: The face of the indictment bears the title " THE PEOPLE *vs.* PATRICK J. LANGAN [the appellant] and JAMES MOFFITT ". Opposite Langan's name is written in ink the index figure " 1 "; opposite the name of Moffitt is the index figure " 2 ". At the top of the space where notices of appearance are recorded is the following notation — crossed out and marked " Void " — of a notice of appearance filed January 15, 1930, by " Irving Abelov ". Immediately under the record thus voided, and opposite the index figure " 1 " is the record of the notice of appearance, to which reference has already been made, filed January 16, 1930, by Le Roy Campbell. Beneath the notation of the Campbell appearance are notes which record the filing of the last notice of appearance as follows: The date " 1/20/30 ", an index figure " 2 " — which, as we have seen, is the same figure inscribed on the title to the indictment *oppo-*

*site the name of the defendant Moffitt* — followed by the name and address " Irving Abelov, 315 W. 54 St ".

We do not find in the record a formal notice of appearance by an attorney who represented the appellant in the proceedings which led to his conviction in 1930. Nor do we find in the notations upon the indictment, mentioned above, any evidence which supports the unverified statement in the District Attorney's memorandum that " The notations on the original indictment indicate that the defendant [Langan] was represented by counsel    ˚    ˚    ˚." Rather do the notations afford support for the verified statement by the petitioner, already noted, that — " *   *   * Mr. I. Abeldorf was hired by the co-defendant's [Moffitt's] family to defend him solely. The indictment shows that Mr. Abeldorf was counsel for the co-defendant James Moffitt, and not for the defendant [Langan]."

Nor are we impressed by the statement made in the District Attorney's unverified memorandum that " *   *   * the minutes of sentence also show that an attorney appeared on the defendant's behalf." Upon the hearing in the present proceeding, at which the petitioner was not present, the following examination of Irving Abeloff appears of record:

" THE COURT: Have you a recollection that you were the attorney in the case?

" MR. ABELOFF: That is what I was just about to say. When the D. A. said to you I said to him I recollected representing the attorney [*sic*], I beg to differ with him. I did not make that statement. At this time I say to Your Honor I am not saying I didn't represent the defendant, and I am not saying I did. I have no independent recollection. It appears to me that I did represent the defendant, because I would not have come in and filed a notice of appearance for him and the co-defendant and appeared before [*sic*] him on proceedings before sentence. So, it therefore would appear to me that I did represent him."

That frank but inconclusive statement by Irving Abeloff becomes more inconclusive when considered in the light of the fact, already referred to, that no notation appears on the indictment that Irving Abeloff appeared for the appellant. If the notations upon the indictment have any probative value,

the appearance in the proceeding by Irving Abeloff — as stated by the appellant — was for the codefendant Moffitt.

In view of the failure by the District Attorney in the present proceeding either to come forward with a verified statement of facts, or to furnish unquestionable documentary proof which served conclusively to refute the factual statements contained in papers submitted by the petitioner, we think the presumption of regularity, invoked by the District Attorney, was overcome by the factual statements in the petitioner's motion papers.

In *People* v. *Richetti* (*supra*), when the presumption of regularity was invoked in circumstances akin to those here involved, it was said (p. 298): " * * * We do not think that presumption of regularity can serve to settle without trial, what otherwise would be a plain dispute of fact. A presumption of regularity exists only until contrary substantial evidence appears (*People ex rel. Wallington Apts.* v. *Miller*, 288 N. Y. 31, 33; *Galpin* v. *Page*, 18 Wall. [U. S.] 350, 365; 9 Wigmore on Evidence [3d ed.], § 2491). It forces the opposing party (defendant here) to go forward with proof but, once he does go forward, the presumption is out of the case. It could not conceivably be used to prevent defendant from proving his allegations. There must be a trial, as we have indicated, and it will be for the Trial Judge to pass on all questions of fact, including the credibility of defendant and of any other witnesses on either side." (See, also, *Matter of Bojinoff* v. *People*, 299 N. Y. 145, 150–151.)

In the circumstances disclosed by the record before us it is the petitioner's right to be present at a hearing in open court upon the merits of his application for a writ of error *coram nobis*, and to have the aid of counsel at such hearing if he is so advised. (*People* v. *McLaughlin*, 291 N. Y. 480, 482–483; *Johnson* v. *Zerbst*, 304 U. S. 458, 462–468.)

The orders should be reversed and the proceeding remitted to the Court of General Sessions of the County of New York for further hearing and proceedings not inconsistent with this opinion.

LOUGHRAN, Ch. J., CONWAY, DESMOND, DYE, FULD and FROESSEL, JJ., concur.

Orders reversed, etc.